Move now to the final case on the argument calendar for today, Uber v. City of Seattle. 1. All right, whenever you're ready, counsel, and as the clock indicates, counsel have 20 minutes aside. It is my understanding that the appellants are splitting their time. You're going for 14 minutes and your colleague is going for six minutes. Is that right? Yes, Your Honor. And again, as with the previous argument, we're going to have your individual time on the clock, and so you have 14, and when you're down to zero, your colleague will still have six. Thank you, Your Honor. Good morning, and may it please the Court. David Zients on behalf of Uber, and I'd like to please reserve three minutes of my time for rebuttal. Section 50A of the Seattle Ordinance compels Uber to write a deactivation policy, and it regulates the content of that policy. I'd like to make three basic points about this provision. First, compelled disclosure of information triggers First Amendment review, full stop. That is the case even when the government merely compels disclosure of a preexisting policy. It is certainly the case where the government compels the creation of a policy and regulates its substance. Second, Section 50A does not fall within the Zouderer exception to heighten scrutiny. It is not a disclosure of facts. It is not a neutral statement that the government created certain rights. It compels a policy statement that reflects value judgments, and it restricts what that policy can say. Third, the city cannot carry its burden under any form of heightened scrutiny. Most fundamentally, the city cannot explain why it needs a direct, standalone regulation of the contents of a written policy in order to meet its economic objectives. So, counsel, let me ask you just some preliminary question or two. Obviously, the PI was denied, and you're, as far as I know, still operating in Seattle. Have you issued the required policy? Yes, Your Honor. And that's, is that in the record? Ron, it's not in the record because the record was... No, no, I... I can tell you that Seattle has, excuse me, Uber has changed its policy in a way it believes is compliant. All right, so then let me ask you a hypothetical question, which I'm also going to be asking your colleague and your friend on the other side. If, hypothetically, the panel disagreed with the district court that the ordinance did not touch speech at all and was simply conduct-related, but hypothetically disagreed with you that the ordinance was subject to strict scrutiny and didn't find that the ordinance was subject to rational basis review, but in fact was subject to some type of intermediate scrutiny, is it your view that we should simply decide the case on appeal in your favor, or that if we were to hypothetically come to that decision, whether we should remand for the district court to reconsider in light of the facts now on the ground, in light of our ruling on the law, and in light of the winner factors, which the court felt it didn't have to reach? Sure, Your Honor. So our position is that if you reach all of those conclusions, that the court should do what it did in X-Corp, where it found that the wrong standard was applied and then it applied the right standard. Our view is that this is a fairly straightforward case, even under intermediate scrutiny, because this burdens substantially more speech than necessary. In terms of, I don't think anything about what Uber has done would really bear on the application of intermediate scrutiny here. Although you're advancing an as-applied challenge.  And we don't know whether the issuance of the policy has changed things on the ground. Your Honor, I think the... I mean, it's just not in the record what the city has done to enforce. It's not in the record what harms you might have suffered that aren't in your briefs, and the district court never really reached the public interest because he said they're fixed and I don't have to because you lose on the law. Right, Your Honor, I agree with all of that. What I would say is that, you know, first on the non-merits factors here, you know, what this court has said many times, especially in a First Amendment case, that it's, I think the court has used the word axiomatic, that once there is a likely First Amendment violation, it's axiomatic that there is harm and that the public interest supports an injunction. In terms of, you know, yes, this is an as-applied challenge. What we did say in our brief is we're not sure that that would really matter because it's hard for us to sort of envision ways, you know, that what this ordinance is requiring network companies to do would be constitutional. And I think the fact that Uber is speaking in a way now that it thinks it should not be forced to do, you know, I don't think that could really change the First Amendment analysis. Counsel, I'm sorry. Would your argument be the same if you were simply required to either post or transmit to each driver a copy of the ordinance or the guts of the ordinance with or without the initial lengthy findings? Sure, Your Honor. If, you know, if there had been a different ordinance that did not have a policy requirement that requires Uber to articulate a reasonable policy as its own policy, but instead... No, you're fighting the hypothetical. The ordinance says what it says. If the requirement were to give everyone a copy of the ordinance as distinct from a policy that you promulgate in response to the ordinance, would you make the same First Amendment argument or is that like the, you know, posting of the NLRB statute or whatever? Your Honor, I think if all we were talking about was telling people their rights, no, I don't think we would be making the same argument. There is a different provision of the ordinance that essentially does that. That's Section 100, which is the Notice of Rights. And what is interesting, we attach this to the addendum of our brief, it really sets up this whole system of it's all about Uber's policy. And you look at that policy, it has to be reasonable. It doesn't actually say anything about the specific, you know, grounds that Uber is not allowed to include. So when you read the Notice of Rights, which is sort of a version, I think, of what Your Honor was suggesting, it doesn't say you have a right to have really low ratings and stay on the platform. It doesn't say you have a right to get in, you know, multiple traffic collisions and stay on the platform. If, you know, we would be in a different situation if we had the government just saying we are creating rights and you have to tell them to people. That's what, that's the Second Circuit's decision in Compass Care. And the Court there was very clear, you know, it was talking about what was being disclosed was the existence and basic nature of a law. If all the requirement was here was here's the law and you have to tell people about it, yes, Your Honor, this is a short answer to your question. We wouldn't be making the same arguments. To whom is Uber required to make this statement? Uber is required to disseminate this policy to couriers on the platform. So it's basically telling your couriers or whatever term you use, the people that are not working in an employment sense, that's a whole set of issues, but the people who are doing the work in the field through the Uber app. It's not a statement that's required to be disseminated to people who do not have that relationship with Uber. No, Your Honor. So basically, the Ordinance seems to say you got to make clear the terms of non-employment, but I'll use employment for clarity. The terms of employment. Does it say that Uber has to think those are good terms of employment or what Uber would do if it was in a Uber perfect world where it could pay whatever it wanted and charge whatever it wanted and fire and dismiss whenever it wanted? Does it require Uber to affirmatively endorse these standards? I think that the regulatory structure that was created here does do that because it tells Uber it must write a policy. Does it say that we don't like these rules, but these are the rules we're going to apply? Could Uber do that? Your Honor, Uber could do that. I don't think that changes the First Amendment analysis for reasons. Why not? If Uber isn't required to affirmatively endorse, if Uber can actually disclaim and say we wish we could pay you less, we wish you could terminate with absolute authority on our part, but we can't because the city imposes limits. So here are the rules. Where's the First Amendment violation? I think the problem is that that's not actually what this Ordinance does. There is no place in this Ordinance. Well, take my hypothetical for a moment. Could they do that without violating the First Amendment? I think they could. Okay, so what's the problem here? The problem here is they did something different. What the city did is they said that Uber must write a policy. It must make judgments about what is reasonably related to safety and efficiency, and here are things in your own policy that you cannot say. There is nothing anywhere else in the Ordinance that says it is an illegal practice to deactivate a courier's account because of their low customer ratings. But that's a regulation of conduct. You can deactivate for reason A, but not reason B is a regulation of conduct, not speech per se. Your Honor, yes, in a different Ordinance that said you may not deactivate for the following reasons, that would be a regulation of conduct. This Ordinance does something different. This Ordinance says Uber violates it based only on the contents of its own written policy, and again, I think there is a First Amendment value here in terms of distorting understanding of what's going on. If the City of Seattle had said, we really do think people should have a right to stay on the platform despite multiple traffic collisions, if they gave that right and they could tell Uber, you have to tell people the City gave you this right. Well, that is essentially what it does. I mean, it sets standards for deactivation and says some things are not good enough. That seems to me to regulate conduct pretty entirely, and of course it's a commercial, the rules that apply to commercial speech apply here because this is all about Uber's business relations. So, I guess I have difficulty seeing why there is a problem also. Sure, so respectfully, Your Honor, I think when you actually drill down on the text of this Ordinance and Seattle decided to do this the way that it decided to do this, Section 50A is all about the policy. It's not about the conduct. There is a different provision, Section 60A, that is about the conduct of deactivation. Well, all about the policy is that you've got to make the terms of employment clear. You can't simply decide on your own, you're terminated. You've got to post some standards. That's a statement that's not unlike the fact that most places of employment with many employees, there's a bullet board someplace that has a bunch of disclosures required by the State Labor Department, and that's not a problem. I agree that's not a problem, Your Honor. In A1 of 50, 50A1, if the City had stopped there, I think it's reasonable to say we wouldn't be here. That's the transparency. That's tell people what your policy is, what you're going to do. The problem comes when you get to A2, and it starts to qualify what Uber's policy should say. It needs to be a reasonable policy. Which is about conduct. Again, the policy regulates conduct. That is when to deactivate, when you're not allowed to deactivate. That is conduct on the part of Uber. You use a word to say you are deactivated, you are not deactivated, but the regulation ultimately is about firing, for lack of a better word, or not. What is cause for firing and what isn't? Your Honor, I think this regulation, 50, this provision, and NetChoice teaches you go provision by provision, and you don't say you bundle them all together. 50A, and in particular A2, is regulating speech about conduct. I agree, the underlying question of a deactivation is about conduct. Section 50A2 does not say you may not deactivate in X, Y, and Z circumstances. It is a regulation of a policy statement. So that is speech in our view. I see I've eaten into some of my rebuttal time. We helped you. All right, thank you. Thank you, Your Honor. May it please the Court. Judge Bennett, I'd like to begin with the hypothetical that you asked Mr. Zions about whether if you agree that this is a speech regulation, but not necessarily subject to strict scrutiny, whether it requires remand. We would say that no, because there is no additional factual development that is required in this case. If you were to apply intermediate scrutiny, we think on this record you can decide that the ordinance fails intermediate scrutiny because even under intermediate scrutiny for applying a central Hudson standard, the final prong of central Hudson is that the government cannot compel more speech than is reasonably necessary to accomplish its goals. And what was the city's goal here? Everyone agrees the city was trying to regulate what it calls unwarranted deactivations. Well, the city could have just done that. Everyone agrees. It could have written a list. Companies, you shall not deactivate workers for X, Y, and Z reasons. But the city didn't do that. Instead, what the city said. Well, they have done that, right? No, Your Honor. In a separate portion of the ordinance? Well, Your Honor, there is a section of the ordinance that bans discriminatory deactivations, which is a direct regulation of the grounds on which a company can deactivate a worker. But in fact, how this ordinance indirectly regulates deactivations is by first telling Instacar and Uber that you must identify, you must list. So maybe I'm confused about what the ordinance does, because I'm looking at the section .060 about deactivation. And it talks about unwarranted deactivation. And then when I look at the definition of unwarranted deactivation, it says it means a deactivation that does not comply with section 50. Correct. So it seems to me that this is a statute which, at least in part, prohibits firing someone for no reason or a reason that doesn't comply with the ordinance. Section 50A2 requires a company to first articulate reasons. It doesn't actually give any warranted reasons, any reasons that a company can deactivate a worker. What it says is the company must adopt a policy that lists reasons not given in the ordinance that are reasonably related to safe and efficient operations. But doesn't the ordinance basically say, here are reasons you can't fire somebody? What the ordinance says is that in the city's view, there are certain reasons for deactivation that do not relate to safety and efficiency. So it's not just their view that it's in the ordinance that these are not valid reasons to deactivate. And there's a pretty long laundry list. And those are carve-outs that a company cannot include in its own policy. But that doesn't mean that the company doesn't have to first articulate a view about what reasons are related to safe and efficient operations. Not necessarily a view. Articulate what its policy is and tell the people subject to that policy. You don't have to say it to anybody else. But it's saying you have to have clear terms of, quote, employment and post those so the people subject to them know what rules they have to follow. I'm not sure how that's not itself a form of conduct, at least making clear the terms of employment. How is that speech? It's not announced to anybody else. The company is not required to say we think this is a good idea. We're all for this. We'd rather have absolute arbitrary authority. But the city won't let us. So here are the rules. How is that a First Amendment violation? If the city had only said, Instacart, Uber, you must tell workers what your policy is and stop there, perhaps the ordinance would be different. But that's not what it did. What it said was you must articulate reasons which are reasonably related to safe and efficient operations. Well, it's combined two things. You got to say what the policy is. And these are conduct regulations of what the policy can be with certain minimum standards. It combines those two things. I still don't see free speech at issue. Because there is a normative value judgment that the company must make to comply with this ordinance. If you don't want to pay the minimum wage, if the law says you've got to pay a minimum wage, how is that a normative judgment on the part of the employer? Imagine two ordinances, Your Honor. One ordinance says you must pay workers $25 an hour. We can all agree that that is a conduct regulation. It may have indirect effects on a company's speech. The company can't write $24 on the paycheck. But it's a conduct regulation. Now, imagine a different ordinance that says, company, you must adopt a fair wage policy. And that policy will not comply if it pays a worker less than $25 an hour. Now, look what the ordinance is doing. It's requiring a company to first articulate a policy which carries an implied judgment that the wage stated in that policy is fair. Now, we've compelled a normative statement. Is your client, Mabel Instacart, required to say, we think this is a good idea? No, not directly. But there is an implicit value judgment in laying out the reasons for deactivation that must relate to, this is the ex-corp problem. So, well, counsel, so you've argued that this is the same as the Net Choice case, a case with which I'm familiar. And in Net Choice, what we talked about was this clearly compelled speech by requiring covered businesses to opine on potential harm to children. Where is the equivalent here? I mean, I agree with you that this, and I'll talk to your friend about this, that this is causing you to speak. But one of the reasons we enjoined the policy in Net Choice was because it required businesses to opine on potential harm to children, a potentially controversial subject. What is this causing you to opine on? It is causing you to, here are the reasons we're going to fire you or not fire you. But what is it causing you to opine on that's an equivalent to Net Choice? In Net Choice, the opinion was implicit, just as it is here. The implicit opinion we must offer is the relationship of certain behaviors, which we lay out, and safe and efficient operations, which are then shaped by the ordinance, which carves out reasons that MapleBear and Uber has said in its briefs believe actually are related to safety and efficiency. So it is requiring us both to opine on the definitions of safe and efficient operations. It doesn't require you to opine on anything. If you have a policy that says the only reason we'll deactivate is if you've been convicted of assaulting a passenger. I'm just using that as an example. Where's the opinion in that? The implicit opinion is pointing to, there's a creative process. Somebody has to sit down with a pen and write out the reasons in advance. Yeah, that means you use words, but that doesn't necessarily equate to a First Amendment violation. Correct, Your Honor. But the implicit opinion comes in because we must tie those to a concept, which is safe and efficient operations. So by setting them out, we are saying our opinion about what behaviors are related to safety and efficiency, which requires us to define safety and efficiency, just as a company in Net Choice had to define harm to children by identifying features that would be potentially harmful to children. If you propose to assert the authority to deactivate, basically doesn't this say what's going to justify deactivation and what's not? I'm not sure how that's expressing a normative judgment, an opinion of the part of the company that's not something that's an acceptable statement in the context of letting the people working for you understand what the rules are. It is the connection you have to draw between the two, Your Honor. So by laying out the reasons, you must, at least implicitly, if not explicitly, say that those reasons are related to safety and efficiency. But the company has not left enough- subject to the policy. You may thoroughly disagree with it. And you can preface the statement by saying, we don't think these rules are right, but this is what the city makes us do. And so here are the rules we're going to apply. Well, that remedy would- How does that express an opinion of the part of the company other than, we don't like these rules, but the city's making us do it? Understood, Your Honor. So the opinion is implicit, regardless of whether you can then make an additional statement disclaiming- How is it implicit if you're allowed to say we don't believe this? But we're required to do it. How does that mean everything that follows is implicitly the opinion of the company? Understood, Your Honor. The option to then disclaim the opinion that you've just offered does not cure the First Amendment violation. If it did, there would have been no violation in NetChoice or ExCorp. Those companies could also have said, we disagree with the statements we are just required to make now. And as a factual matter, what I'll say is it's not entirely clear that a company even could do this and comply. The ordinance requires a company to articulate the reasons in such a way that it is clear to the worker which grounds the worker could be deactivated on. And if a company were to speak out of both sides of its mouth in a policy and say, here are the reasons you may be deactivated- Well, it's not because- I mean, to go back to my example, the only reason why we will deactivate you is, in my hypothetical, because you've been convicted of the crime of assaulting one of your passengers. And then why not add a sentence saying, we really wish we could list a whole lot of other things, but the ordinance won't let us. And we think that's terribly unreasonable. That's your opinion, presumably, not the opinion of the ordinance. It's the opinion against the ordinance, to build on Judge Clifton's example. Understood, Your Honor. And certainly, a company could do that in some other context. What I would offer to you is that that doesn't cure the First Amendment violation. Being required to articulate the view in the first place, is something that this is a view that we're stating, that there is a- It's not a view, it's a statement of your conduct that you intend. When are you going to fire someone, and when are you not? It's just like all kinds of company policies, you know, that will give you a warning first, and then you'll be suspended, and then you'll be fired for this list of problems. I would agree with you, Your Honor. All the ordinance had said, as my colleague said, had stopped at A-1, and just said that the company must disclose its own views, its own policies. But the ordinance doesn't do that. No, it forbids you from firing someone for specific reasons, which is conduct. It does two things, Your Honor. Section A-2 actually doesn't forbid any particular grounds. What it says is the company must have a policy that identifies reasons that are related to safety and efficiency, and then carves out reasons that cannot be included in the policy. And then the way unwarranted deactivations are identified is deactivations that are outside of the policy. And so the conduct regulation actually doesn't occur until the companies speak. They must speak the ban on certain deactivations into existence. It's not a- Counsel, unless my colleagues have any more questions, because of our questions, you're over time. Thank you, Your Honor. Thank you, Your Honor. Good morning. May it please the Court. Jessica Goldman on behalf of the City of Seattle. I'd like to start, Judge Bennett, with your question about remand. And if the Court were to rule that the First Amendment is implicated, I think that the answer to your question comes from Expressions Hair Design, the United States Supreme Court decision in 2017, where exactly the same procedural posture was presented. The Court said there was no First Amendment implication and never went through the scrutiny analysis of what level should be applied and then applying the scrutiny. And the Court ruled that it is a court of review, as is this Court, and the proper procedure is to remand to the District Court for the First Amendment analysis. All right. So let me ask you, thank you for that. And let me ask you what my primary problem with Seattle's position here is. Is in 50A2, it says the policy that may lead to a deactivation must be reasonably related to the network company's safe and efficient operations. Yes? Yes. And they have to issue words. Yes. And I mean, that alone doesn't implicate the First Amendment, but the words they have to issue, which Seattle is commanding them to issue, are words that reflect, in my view, their opinion as to what is or is not reasonably related to the company's safe and efficient operations. It's not merely a list of reasons they can't get rid of somebody. It's saying you can only have stuff that relates to safe and efficient operations. You have to come up with a list. And they obviously have to comport with your opinion and view as to what constitutes safe and efficient operations. Now, if I'm right that that speech, even if it's subject to intermediate scrutiny, it may well survive. But why isn't that speech when you are saying to them you have to have this policy and it has to equal what you believe are safe and efficient operations? Well, to start with, Your Honor, Uber and Instacart have both conceded to this court that if the ordinance simply said are not reasonably related to the network company's safe and efficient operations, that would be acceptable. And that would not run afoul of the First Amendment. Their problem is only in the language that follows, which are examples, negative examples of what that language means. I'm not sure your colleagues would agree with your statement, but we'll hear from them. Certainly, Your Honor. And I'm looking directly at their briefs where they have said that. I'm looking directly at them, so. OK. Where in the briefs would you cite us to? You know, I'm sorry, Your Honor. I don't have their briefs with me right here. But they do say so in their briefs. I could certainly supplement to the court. They've certainly said today, which seems to me to actually follow from the language in the policy, that whatever they come up with as reasons for getting rid of somebody has to reasonably, not just relate, has to reasonably relate to safe and efficient operations. Although they know what they can't put in there, they have to first decide what constitutes safe and efficient operations. They have to then decide what reasonably relates to it. And they have to then decide what they're going to then put as grounds for firing. So the third part is not a problem to me. But the first two, how can, why is that not speech? I'm having a lot of trouble understanding why that's not speech. I mean, I would agree with you that it's commercial speech. I don't think it's subject to strict scrutiny. But why isn't it speech? Well, Your Honor, I think the reason that it is not speech is, well, it is speech. But it is speech that is, falls under a conduct regulation. And the Supreme Court and this court in multiple cases has made clear that when speech must accompany, by definition, because we function in a world with words, the conduct mandate, then that is not treated under First Amendment analysis. That's my argument. I can understand if the court disagrees with that. I would urge the courts to apply the Zouderer standard of review. I would urge that to the district court on remand, as we did before. But you could have had an ordinance that said, for example, and I mean, obviously, Seattle within constitutional limits can pass whatever ordinance it wants. But you could have had an ordinance that said, you may only fire someone for reasons that reasonably relate to safe and efficient operations. And if you fire somebody for any other reason, they can sue you. Right? Yes. But that's not what you did. You said sort of that. But then you also said, but it's up to you to list the reasons you're going to fire somebody, not just safe and efficient operations. Right. But they are listing things in compliance with a statute that sets the standard. That's the standard. The standard is not reasonably related to the network company safe and efficient operations. That's excluded. That's the standard they have to apply. So by definition, that would mean that any time that a company, for example, OSHA. OSHA requires that employers have procedures, written procedures that explain to employees how they are compliant with the statute. Same kind of deal with so many state statutes and city ordinances that simply say, this is what you have to do. This is the substantive regulation that governs your relationship with your employees, your contractors. Now go ahead and explain how you're going to abide by that. So it sounds to me as if you're making the argument that functionally, what this ordinance does is to say, you may not fire someone for a reason not reasonably related to safety or efficiency. That substantively, you can't do that. And we're going to partially define that for you. And separately says, whatever policy you now adopt, you need to let the employees know. So is that what you're arguing? Yes, Your Honor. And the latter part of that, the you need to let your employees know, that was a concession that was just made on an oral argument, that they are not taking issue with 050A1. They're saying it's fine for the city to direct a network company must inform the app-based worker in writing of the network company's deactivation policy. Both councils said that to you in their arguments. So they don't say that directing them to have a policy is a violation of the First Amendment. That would be fine. It's just that explaining what the substantive standard is converts that into a regulation of speech. At least to the extent that, I mean, you could set specific standards and they seem to acknowledge if those standards are set, okay. The complaint appears to be with a couple of things. One, the less specific standards. Separate from the vagueness attack, some concern that, well, reasonably related is amorphous and opposes upon us the responsibility of defining that more specifically. And then articulating that beyond these minimum going too far, you can't do this, but they're required to create something which they will promulgate short of that. And I think the concern is, isn't that a form of speech that at least implicitly says this is our judgment as to what these things are? I mean, I've posed a hypothetical saying, couldn't they disclaim and say the city's making us do that? And they acknowledge maybe at that some point, but that's not what's going on here. They're being expected to articulate for the app workers, this is what we think we should be able to deactivate based on this because these are reasonably related to safety and operations and so forth. So isn't that putting some onus on them to articulate standards that they've agreed they wouldn't have a First Amendment issue if they weren't required to come up with those, but they're saying because they are required to come up with those and articulate them, that's the problem. Your Honor, I would disagree respectfully with one part of what you just said, which is that they're being required to articulate a standard. They're not. The ordinance articulates the standard. What they are being required to do now is to change their policies. Well, put flesh on that. I mean, could they, would the city be satisfied, would they comply with the ordinance if they simply said you may be activated if, in our judgment, your actions have deteleterious effects on the company's safe and efficient operation? And we won't deactivate you for the laundry list, but short of that, it's all up to us. Or are they being required to put a little more flesh on the bones to give better guidance to the workers as to what the standards are? It's that latter part that I think is of concern. It is, your Honor, fair to say that the latter is required. And the reason why, one of the motivating factors for this ordinance is transparency. One of the concerns here is that the companies deactivate workers. They get knocked off. They have no basis to know why. They had no basis to appeal it. They had no human being involved in the process. Yeah, you've forbidden at-will employees. I'm sorry? Seattle has forbidden them from having at-will workers. No, your Honor, I wouldn't say that they have prohibited them from having at-will employees. They're also not allowed to discriminate. No, but doesn't... You got limits. Doesn't an at-will employee, somebody who has an at-will employee, mean that they can fire them for any non-discriminatory reason? Well, it now in Seattle also means that you cannot fire a contractor if the reason that you're firing... No, it's not at-will anymore. But I think the requirement for specificity is found in 50A1, which says that the policy must be specific enough for an app-based worker to understand what constitutes a violation and how to avoid violating the policy. So I think it's baked in that it has to be more than anything that is reasonably related to safe and efficient operations. Yes, I would agree with your Honor, and counsel has said they have no problem with A1. And the purpose for A1 is this transparency reason that workers should know what they need to do so they can govern themselves accordingly and try to keep their jobs and try to pay their mortgages. That that's a critical component of this, and that is A1. It's also A2. So I want to make sure I understand. Maybe I just heard you wrong. As I read A2, the only thing that can lead to firing somebody is a reason that is reasonably related to safe and efficient operations, right? Yes, that is what A2 says. Okay, so it can't be any other reason? Under A2, the ordinance also says you can't discriminate. A1 requires them to put flesh on the bones of what is reasonably related to safety and efficiency. That's correct. They also cannot discriminate, which is not part of this subsection. It's part of a separate section, which they don't have any dispute with. And obviously, there are many statutory mandates for employers to create policies explaining how they are going to comply with anti-discrimination laws, but they don't have a problem with that component of it. And I would... I don't know that I have to say anything other than we're not going to discriminate. That's not quite the same, for me at least, not the same analogy. We understand discrimination subject to a whole array of other statutes and so forth. Here, we're focused on this reasonably related to the network company's safe and efficient operations. And the concern, as I understand it, is by requiring them to flesh that out, they're required to express what they think would justify deactivation because it was reasonably related to the safe and efficient operations. That requires them to make some calculations, make some determinations, and publish that at least to their workers. Isn't that a form of speech? For the reasons I've already argued, I don't think it is, Your Honor. I also want to point the Court's attention, as we have in our supplemental authority, to Olympus Spa v. Armstrong. Six weeks ago, this Court made this decision, which is really on all fours here. In that case, though, the Court did go on to apply intermediate scrutiny, saying that, at most, intermediate scrutiny was required. The Court said that the Spa claimed that mandating what its policy must say was compelled speech that violated the First Amendment, and this Court said, no, that's not true. This Court held that the Washington law, which required the change in the Spa's written policy, regulated conduct, not speech. This Court held that the Spa's policy was, at most, only incidentally expressive. The Court emphasized that compelled changes in conduct, which must incidentally compel changes in speech, are not reviewed as content-based speech restrictions. And finally, the Court held that because the Spa's practice of denying admission to preoperative transgender women was unlawful under Washington law, limitations on the entrance policy describing that practice did not trigger the First Amendment. Those were the words of this Court. And so that is what I would most recently rely on. There's, of course, an entire body of law that predated that decision. The Court then does go on to say that, well, in any event, they clearly satisfy intermediate scrutiny, which, at most, is what would be applicable in this circumstance. So I think that is on all fours with the idea that speech is not — the speech that is required here does not trigger First Amendment scrutiny. I also, if I may, want to turn — it is our position that remand is appropriate should this Court disagree with, really, the primary and only decision that the district court made, which is that the First Amendment was not triggered here. But I want to address the issue of scrutiny to this Court. We, of course, think that if scrutiny is warranted, it is governed by Zouderer's rational basis test. And Seattle's law easily satisfies that standard. But let me turn just briefly to central Hudson, which would be the standard that would be applicable to standard commercial speech where it's not mandated. The mandated kind of language, that's what Zouderer addresses. But if we failed on that and central Hudson is the standard, I want to just address this idea about what is required for the fit between the interests and the means that has to be reasonable. That's the final part of central Hudson. And in Project Veritas, earlier this year, the en banc Ninth Circuit ruled that Oregon's wiretap statute satisfied intermediate scrutiny. And Judge Bennett, concurring, noted that to satisfy central Hudson, a regulation need not be the least speech-restrictive means of advancing a governmental interest. And Your Honor confirmed that whereas here, in this case, a governmental interest would be achieved less effectively absent the regulation, and the regulation achieves its aim without significantly restricting a substantial quantity of speech that does not create the same evils, the regulation is sufficiently... Counsel, did any of my 10 colleagues join my concurrence? Well, Your Honor, this was not invented by Your Honor. My recollection is that I was on an island. There may have been parts of your concurrence, Your Honor, where you were on an island, but that was certainly not one of them because it reiterated what the majority held is the standard that they applied for intermediate scrutiny. Now, Uber and Instacart's main argument here is that Seattle should have just simply banned deactivations for prescribed reasons. They should have just said, these are the prescribed reasons. But that is a regulation that would not have accomplished all of the purposes of this ordinance. Primary among them is the idea that of notice, that it is fair and... Or it would, if they listed permissible and impermissible and post a copy of this, it would have been informative. Yes, Your Honor, I think that's correct. It also would not have necessarily been effective. These are two different businesses. And if this were remanded to the trial court to look at the actual policies that they have adopted in conformance with this ordinance, they're different. These two companies have made very different judgment... They have different opinion. They've expressed different opinions on what's safe and efficient operation is. They have different business models, Your Honor, which generate a different... What is efficient for a business is dependent on a business model. And so I think that it would not have been as effective to regulate, to make sure that these regulations comply with the purpose of the ordinance. I do wanna make clear though, that it wouldn't have been enough simply to say, you have to have a policy. That is not enough because they have a policy. They both had policies. These companies had policies in December of 2024 that were not compliant with the ordinance, which they both said spoke their views on everything. So just like an Olympus spa, where that company had its own opinion baked into its... Before the ordinance, they might've thought that two traffic accidents was enough to get rid of somebody. As a driver in Seattle has made the judgment that two traffic accidents are not enough to fire somebody. I think they would have thought that one was, Your Honor. But yes, I think that that's correct. But it's no different than the situation in Olympus spa. I see that my time is now up and I'm in negative territory. I wanna make sure I've answered all of the court's questions. Well, I do wanna raise one separate question, separate from the merits, but now that we're into red territory, I feel I can do it. You filed two separate briefs here and they're both overlong. And the certification cites a rule that they're allowed to have a longer length limit because a party is filing a single brief in response to multiple briefs, only it didn't. You gave us two separate briefs. So how does that comply with the rule? Thank you, Your Honor, for the question. They're two separate appeals and there were amicus briefs filed. So that rule is responding to, that's the basis for that certification. Each of these parties filed separate briefs, making separate arguments. And you filed two separate briefs. That's correct, Your Honor. So how does it comply with the rule that you filed a single brief in response to multiple briefs, when in fact you didn't file a single brief. You filed two separate briefs that are mostly the same. I'll acknowledge that, except that they had different page numbers. And I had to read both of them instead of just one. The whole point of the rule is to say, well, if you're going to combine things, we'll give you a little more space. Well, we got two overlong briefs instead of one overlong brief. And I don't think that's what the rule is supposed to say. Well, I take your criticism, Your Honor. These cases have never been consolidated. So when we receive two appeals with two opening briefs, the rules... Then how can you attest to get a longer word limit because you're filing a single brief and responsible to multiple briefs? I see that my answer is not satisfactory, but the basis for it is that we were also responding to amicus briefs that were also duplicated in both cases. So that's my answer, Your Honor. On behalf of the city of Seattle, we ask that the court affirm and thank you for your courtesies. Counsel, remind me, how much time had you originally asked for for rebuttal? We'll give you three minutes. Thank you, Your Honor. Just a few very quick points. We have absolutely not conceded that we are fine with the requirement to come up with a list of things that are reasonably related. Page nine of our reply brief, I think is particularly clear. I'm pretty confident there's other places too, but that's the first one I found. Second point, Uber does have to express opinions in announcing a policy that it believes is reasonably related to safety and efficiency. If you look at the notice of rights that the city has written, it tells people you have a right to receive fair notice of a policy. The policy must be reasonably related to the company's safe and efficient operation. Anyone who reads a policy and says, these are the things that we Uber have come up with as grounds, will necessarily understand because they've been told by the city that this reflects Uber's view of what is reasonably related to safe and efficient operation. That is your determination as to what's safe and efficient. There are the certain minimum statements that you can't justify that way, but otherwise it really must be what Uber concluded it's going to communicate with its employees are the standards. Well, you know, yes, but... They're not being told to say something you didn't believe. In that instance, these are things you concluded were safe and efficient. Your Honor, that is, you know, Uber has to write something, come up with a view of what is reasonably related and then hope that it guessed right about what the city actually thinks is reasonably related because then that will be reviewed. Well, the conduct part, yes. But the statement, again, except for the minimums, I'm not sure how it's anything other than Uber being required to state what the rules are in Uber's judgment. So, Your Honor, I don't think it's correct that only the conduct will be reviewed. Actually, right now, the way the ordinance is set up, the city cannot enforce, you know, individual unwarranted deactivations until 2027. Until then, what it can do is enforce violations of 50A2. So if it thinks that someone was improperly deactivated, there's nothing they can do about it. What they can do is enforce against Uber, we don't like the things that you put in your policy. We disagree with you that this is reasonably related safety and efficiency. That is just policing the speech of Uber. No, it's not policing. It's policing the policy. You've had to articulate the policy, but they're not saying you're in trouble because you said this. They're saying you're in trouble because this policy isn't reasonably related to fair and safe and efficient operation. I don't see it as a speech regulation. Your Honor, I think, you know, you know, I would go to the court's decision, for example, in ExCorp or NetChoice, and we've talked about those cases before. You know, the court there is addressing requirements. In ExCorp, it was actually directed at the company's own policy, and all that the company had to do was to write a report explaining certain things about its own policy. And even that, the court said, was implicitly opining on things in terms of categories that the state had imposed. Here, the state is creating, excuse me, the city is creating a, you know, this concept of reasonably related, and it is forcing Uber to come up with something written that has to disseminate to people. To what people? Disseminate to the people subject to the policy, not a broader statement, not to the outside world. You're simply required to tell the people subject to the policy what the policy is. I'm not sure that's the same. So, Your Honor, I would say under NetChoice, the court specifically rejected an argument that the fact that something is only disclosed to sort of one person there, it was the state, and kept very confidential. That didn't change the fact that it was compelled speech. All right, we thank counsel for their arguments, and the case just argued is submitted. And with that, we are adjourned for the day.
judges: GRABER, CLIFTON, BENNETT